UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-61122-FAM

SUSAN BERNSTEIN,

    Plaintiff,

vs.

ELEVENTH JUDICIAL CIRCUIT
OF FLORIDA,

    Defendant.
_____/

## MOTION TO DISMISS

Defendant, ELEVENTH JUDICIAL CIRCUIT OF FLORIDA, ('Employer' or 'Defendant'), by and through its undersigned attorney, pursuant to Fed.R.Civ.P. 12(b) moves to dismiss the Complaint [DE 1] with prejudice based upon immunity from damages and a failure to state a cause of action and states:

1. Plaintiff, SUSAN BERNSTEIN ('Employee' or 'Plaintiff'), a former mediator within the Eleventh Judicial Circuit, has filed a two-count Complaint against Defendant alleging Interference and Retaliation violations of the Family Medical Leave Act as codified under 29 U.S.C. § 2601, *et seq*. ('FMLA'). [DE 1, ¶¶31-39, 40 -45]

2. In July 2007, Plaintiff was an independent contractor who worked in the Eleventh Judicial Circuit as a mediator. In April 2012, Defendant hired Plaintiff as a part-time court mediator. On or about December 1, 2016, Plaintiff's employment as a part-time court mediator was terminated. [DE 1, ¶ 5-7, 29]

3. Plaintiff's Complaint indicates that her FMLA was based on self-care, in that she sought time to address her personal medical condition after being hospitalized. [DE 1, ¶14, 15]

## I. OVERVIEW OF FMLA

4. FMLA provides that an eligible employee[1] may take "a total of 12 workweeks of leave during any 12-month period" for certain medical reasons. 29 USC § 2612(a)(1). To be considered eligible, the employee must have been employed with the employer for at least 12 months and have worked at least 1,250 hours within the previous 12 month period. 29 U.S.C. § 2611 (2)(A). A public state agency is a qualified employer. 29 U.S.C. § 2611 (4)(A)(iii).

5. An eligible employee may utilize FMLA for either (a) the care for a newborn; (b) the adoption or foster-care placement of a child; or (c) the care of a family member with a serious medical condition; (a), (b), and (c) are commonly referred to as the "family-care provisions". 29 U.S.C. §2612(a)(1); Coleman v. Court of Appeals of Maryland, 566 U.S. 30, 34 (2012). FMLA can also be for (d) the employee's own serious health condition; this type of FMLA leave is known as the "self-care provision". 29 U.S.C. §2612(a)(1); Coleman at 34. Lastly, FMLA can be for a certain qualifying event related to a family members active military duty. 29 U.S.C. §2612(a)(1).

6. An employee seeking FMLA must communicate to her employer notice when such FMLA is foreseeable, and when not foreseeable, must communicate that she is seeking FMLA as soon as practicable. 29 U.S.C. § 2612(e). Only when so requested by the employer, the employee must provide certification from a health care provider as to the medical need. 29 USC § 2613(a).

7. "[A]ny eligible employee who takes [FMLA] leave...shall be entitled, on return from such leave…to be restored by the employer to the position of employment **held by the employee when the leave commenced**; or to be restored to an equivalent position with equivalent employment

---

[1] The term she and her used herein shall refer to both male and female employees.

benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614.(emphasis added) 'Benefits' pertain to insurance, disability, leave, educational benefits, and pensions. 29 C.F.R. § 825.215

8.  An employee is entitled to the conditions she, not others, was receiving prior to going on FMLA. "On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment." 29 C.F.R. § 825.214.

9.  An employee is entitled to the equivalent pay they received prior to going out on FMLA. "If an employee departed from a position averaging ten hours of overtime (and corresponding overtime pay) each week, an employee is ordinarily entitled to such a position on return from FMLA leave." 29 C.F.R. § 825.215. "[I]f a bonus or other payment is based on the achievement of a specified goal such as hours worked, products sold or perfect attendance, and the employee has not met the goal due to FMLA leave, then the payment may be denied, unless otherwise paid to employees on an equivalent leave status for a reason that does not qualify as FMLA leave…" 29 C.F.R. § 825.215. The Act does not mandate that the FMLA employee be granted all bonuses or other payments just because her co-workers obtained them while she was out on leave. FMLA requires that the employee is to be returned to a position equal to the position that the FMLA employee was in prior to her taking leave. When exercising FMLA, the employee does not accrue seniority. Being restored to one's previous position prior to leaving does not "entitle any restored employee to the accrual of any seniority or employment benefits during any period of leave." 29 U.S.C. § 2614(a)(3)(A)

10. The employee is entitled to the same opportunities she had prior to her FMLA that were available prior to leave. "The employee must have the same or an equivalent opportunity for

bonuses, profit-sharing, and other similar discretionary and non-discretionary payments." 29 C.F.R. § 825.215.

11.     "The requirement that an employee be restored to the same or equivalent job with the same or equivalent pay, benefits, and terms and conditions of employment does not extend to de minimis, intangible, or unmeasurable aspects of the job." 29 C.F.R. § 825.215.

12.     Upon return to work, the FMLA requires that the employee be returned to the same location, with certain exception to a worksite closing. "The employee must be reinstated to the same or a geographically proximate worksite (i.e., one that does not involve a significant increase in commuting time or distance) from where the employee had previously been employed." 29 C.F.R. § 825.215.

## II.     FACTS ALLEGED BY PLAINTIFF

13.     Plaintiff states that from July 2007 to April 2012, she was an independent contracted mediator for Defendant, not protected by FMLA. [DE 1, ¶5-6] During this time, Plaintiff states that she was "generally" assigned to the North Dade Justice Center ('NDJC'), which held mediations on Mondays, Wednesdays, Thursdays, and Fridays, but not on Tuesdays. [DE 1, ¶¶10-11, 19] Plaintiff does not define what she means by 'generally', nor does she indicate which of the numerous other court locations she worked in, since 'generally' indicates she did not work at NDJC exclusively. [DE 1]

14.     On April 2, 2012, Plaintiff alleges that she was hired as an employee of the Defendant as a part-time mediator; her hours could not exceed 35 per week. [DE 1, ¶¶ 6-7] Throughout her employment, Plaintiff never alleges that her status was changed to a full-time employee. [DE 1]

15. Between September 2, 2015 through October 16, 2015, specific incidents occurred that formed a basis for placing Plaintiff on a subsequent Performance Improvement Plan (PIP). [DE 1, ¶20]

16. On December 18, 2015, Defendant placed Plaintiff on the PIP due to poor performance based upon the prior three to four months, including the September 2, 2015 through October 16, 2015 incidents. [DE 1, ¶20] The PIP was allegedly scheduled to end on March 18, 2016, thereby totaling 13 (thirteen) weeks. [DE 1, ¶¶20-21]

17. In late November 2015, Plaintiff was hospitalized doe a medical condition. Between November 30, 2015 through December 31, 2015, Plaintiff took off from work 12 days. [DE 1, ¶14, 15]. On December 29, 2015, Plaintiff submitted a FMLA request. [DE 1, ¶15][2] Plaintiff's FMLA leave indicates such leave was based upon her need to care for her personal medical health. Said basis is emphasized by Plaintiff's claim that after the hospitalization, Plaintiff suffered from an urgent and painful need to urinate while driving in traffic. [DE 1, ¶¶ 14]

18. The Complaint does not allege the hours Plaintiff worked in the prior 12 months, and whether she gave 30 days notice of the leave. [DE 1]

19. Plaintiff improperly alleges that the FMLA entitled her to a location change. Plaintiff states that in a January 2016 letter, Plaintiff complained to human resources that a request for a change in her work location was not granted. The FMLA does not require an employer to honor a request to change a work location. Plaintiff was ultimately granted her request. [DE 1, ¶¶16-17]

20. Although this letter was submitted in January 2016, Plaintiff alleges that she extended her FMLA to March of 2016. [DE 1, ¶¶16-19]

---

[2] In August 2012 and October 2014, Plaintiff underwent two surgeries. [DE 1, ¶¶ 12, 13, 14] Although brought up in the Complaint, Plaintiff does not allege these two incidents resulted in her using FMLA.

21.     Plaintiff does not state what specific date in March 2016 she returned to work, thus, the Complaint does not indicate how much actual FMLA time Plaintiff utilized. [DE 1] It appears that Plaintiff was out from December 29, 2015 to anywhere between March 1, 2016 to March 31, 2016. Therefore, Plaintiff took at least nine (9) weeks and at most thirteen (13) weeks and one (1) day off under FMLA; if the latter, Plaintiff took off eight (8) more days than legally allowed. [DE 1, ¶¶ 15, 18]

22.     Based upon the allegation that Plaintiff sought FMLA on December 29, 2015 and extended her leave to March 2016, it appears that Plaintiff only satisfied one (1) week and five (5) days of the PIP prior to her FMLA leave and had eleven (11) weeks and two (2) days remaining on the PIP upon her return to work. [DE 1, ¶15, 20]

23.     Unrelated to FMLA, yet addressed in the Complaint, on April 26, 2016, Plaintiff requested *another* change location, requesting that she be assigned to the North Dade Justice Center ('NDJC') on Mondays, Wednesdays, Thursdays and Fridays, and any other location on Tuesdays. Within a week, this request was granted. [DE 1, ¶19].

24.     Plaintiff never alleges that her status as a part-time employee was ever changed to a full-time employee. [DE 1] Plaintiff claims that in the latter part of May 2016, two (2) months after she returned to work, her hours were being reduced. [DE 1, ¶24] However, Plaintiff never states what her hours were *prior* to her FMLA leave. [DE 1] Further, a reduction in hours does not appear to raise a claim of FMLA as applied to Plaintiff as she clearly indicated in the Complaint that as a part-time employee, and her hours could not exceed 35 hours. [DE 1, ¶7, 24] Such an allegation institutes that her hours were not set and varied during her employment.

25.     Plaintiff alleges that three (3) to four (4) months after she returned from FMLA, in late June to July, she was "singled out" and scheduled less days and hours. [DE 1, ¶25] Plaintiff does

not allege what her hours and days were prior to the FMLA leave. [DE 1] Alternatively, this emphasizes that upon her return from FMLA, during March, April, May and part of June, she was working the same amount hours as her pre-FMLA status.

26.     Plaintiff alleges that the supervisor of mediators would provide other 'busy work' for mediators when there were no mediations available. Plaintiff claims she was the only one who was "instructed 'if there is no work you must leave.'" [DE 1 ¶26] The Complaint does not indicate if this 'busy work' was offered at all locations, as Plaintiff claims she went through several location changes after her FMLA leave, at her own request, and it is unclear throughout the Complaint which courthouse she was working in at what time. [DE 1, ¶¶16-17, 19, 26]

27.     Plaintiff alleges a colleague, Mr. Rosa, was permitted to stay at NDJC when there were no mediations. [DE 1, ¶27] However, the Complaint does not state when this occurred, if Mr. Rosa was a full or part time employee, if he was under a PIP, and what his seniority level was. [DE 1]

28.     Plaintiff alleges that despite her reduction in hours "there was a need for mediator**s**". [DE 1, ¶28](emphasis added) However, she gives two specific instances: First, on May 25, 2016, she spoke with Judge Stein, who indicated that she sent an email to Plaintiff's supervisor requesting that a mediator be present in the courthouse all day.  [DE 1, ¶ 28] Second, eight (8) months after her return from FMLA, on November 28, 2016, the Monday after the Thanksgiving break, that Judge Vizcaino complained that people were waiting for three hours for a mediator. [DE 1 ¶28] These instances merely indicate that *all* mediators, including Plaintiff, were being treated the same in regards to hours and assignments.

29.     On December 1, 2016, approximately nine (9) months after her FMLA return, Plaintiff was terminated as a result of her poor performance [DE 1, ¶ 29]

### III.     MEMORANDUM OF LAW

### A. *DEFENDANT IS IMMUNE FROM DAMAGES*

30. Plaintiff's FMLA leave was based upon her own serious health condition, the 'self-care provision'. There is no right to monetary damages in a self-care claim since Defendant, the State of Florida, has not waived its immunity.

31. Damages sought in an FMLA suit against a state are barred by sovereign immunity when the FMLA is sought by a Plaintiff to care for her own serious medical health. Coleman v. Court of Appeals of Maryland, 566 U.S. 30 (2012).

32. Under the FMLA, when leave is based upon (a) the care for a newborn; (b) the adoption or foster-care placement of a child; or (c) the care of a family member with a serious medical condition, these types of leave are known as "family-care provisions". When leave is based upon (d) the employee's own serious health condition, this type of FMLA leave is known as the "self-care provision". Id at 34.

33. While the "FMLA created a private right of action to seek both equitable relief and money damages against any employer (including a public agency) in any Federal or State court of competence", the states have not in fact waived their immunity for damages under the self-care provision. Id at 33, 34. (internal citations omitted)

34. The difference between the family-care provisions and the self-care provision is that the family-care provisions are rooted in sex discrimination, while the self-care provision is not. "In enacting the FMLA, Congress relied upon evidence of a well-documented pattern of sex-based discrimination in family-leave policies" Id. at 36-37. There is no evidence that the self-care provision is based upon sex discrimination. Id. "[S]uits against States under this [self-care] provision are barred by the States' immunity as sovereigns in our federal system." Id. at 33.

35. "[T]he self-care provision is not a valid abrogation of the States' immunity from suit." <u>Id.</u> at 37. There is "no sufficient nexus, or indeed any demonstrated nexus, between self-care leave and gender discrimination by state employers" "which can abrogate a State's immunity from damages." <u>Id</u>. at 42. Congress has not properly waived the State's immunity from damages for violations of the FMLA's self-care provision. <u>Id</u>. at 43-44.

36. "States may not be subject to suits for damages based on violations of a comprehensive statute unless Congress has identified a specific pattern of constitutional violations by state employers." <u>Id.</u> at 42. (internal citation omitted)

37. Therefore, any claim of damages based upon Plaintiff's use of FMLA to care for her own serious health condition is barred and must be stricken.

### B.  FAILURE TO STATE A CAUSE OF ACTION

#### *Standard of Review*

38. Plaintiff cannot generally allege a violation of FMLA, as she has done here. Plaintiff's Complaint is devoid of necessary facts to state a FMLA cause of action and must be dismissed.

39. A complaint requires "a short and plain statement of the claim showing that the pleader is entitled to relief". Fed.R.Civ.P. 8(a)(2). "Each allegation must be simple, concise, and direct. No technical form is required." Fed.R.Civ.P. 8(d)(1). When analyzing whether a plaintiff has sufficiently stated a cause of action, the court will look to the four corners of the complaint together with the incorporated documents, and items which courts are permitted to take judicial notice of. <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>*,* 551 U.S. 308, 322 (2007).  The complaint is viewed in the light most favorable to the plaintiff and the allegations are taken as true. <u>Edwards v. Prime Inc.</u>*,* 602 F.3d 1276, 1291 (11th Cir. 2010). Although taken as true, the "[f]actual allegations must

be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

40. A complaint must contain sufficient facts to show that she is entitled to relief. "But 'while notice pleading may not require that the pleader allege a "specific fact" to cover every element or allege "with precision" each element of a claim,' a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Avena v. Imperial Salon & Spa, Inc., 2018 WL 3239707, at *1 (11th Cir. July 3, 2018) (FMLA claim, *inter alia*, brought by pregnant employee) quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001).

### *Plaintiff Fails to Allege a Proper Basis for FMLA*

41. Plaintiff has not sufficiently alleged that she is an eligible employee who is protected under the FMLA. In order to utilize FMLA, Plaintiff must: have worked for 12 months prior to the leave, have worked for 1,250 hours in that prior year, have provided notice of the leave, been employed by a covered employer, and provide certification when so required. See 29 USC §§ 2612 and 2611. Plaintiff fails to properly allege four of the seven requirements.

42. First, Plaintiff fails to state the actual time of FMLA she took. Based on the Complaint, at most she utilized 13 weeks and 1 day which would have exceeded her allotted time. 29 U.S.C. § 2612(a)(1) [DE 1, ¶¶ 15, 23].

43. Second, Plaintiff must have been employed with the employer for at least 12 months. 29 U.S.C. § 2611(2)(A). Plaintiff was employee by the Defendant since April 2012. [DE 1, ¶ 6]

44. Third, Plaintiff, a part-time employee, was required to have worked at least 1,250 hours in the prior 12 months, however Plaintiff does not allege any hours worked. 29 U.S.C. § 2611 (2)(A).

45. Fourth, Defendant recognizes it is a qualified employer since it is a public state agency. 29 U.S.C. § 2611(4)(A)(iii).

46. Fifth, Plaintiff was required to provide a 30-day notice of her FMLA request where feasible; where not feasible, Plaintiff was required to provide notice as soon as practicable. 29 U.S.C. § 2612(e). Plaintiff does not allege any facts to show that she provided any notice, let alone proper notice.

47. Sixth, if so requested by Defendant, Plaintiff was required to provide Defendant certification from a health care provider as to the medical need. 29 USC § 2613(a). Plaintiff does not allege compliance or exemption for the certification.

48. Seventh, FMLA the complaint indicated that Plaintiff sought FMLA based upon her November 2015 hospitalization.

49. The Complaint must be dismissed for failure to allege proper allegations, specifically the failure to allege facts showing she was an eligible employee. "Therefore, as we've said, in order to state a claim for FMLA discrimination or interference, Avena needed to plead facts showing that she had a serious health condition (pregnancy), and that the condition qualified for FMLA leave, which required an allegation that she gave adequate notice to Imperial." Avena v. Imperial Salon & Spa, Inc., 2018 WL 3239707, at *2 (11th Cir. July 3, 2018) (emphasis not added) (11th Cir. July 3, 2018). (Pregnant-employee failed to state employer was eligible employer, failed to properly allege notice was given, failed to allege probable duration of leave sought); See also Shanks v. Potter, 451 Fed. Appx. 815, 817–18 (11th Cir. 2011) (complaint dismissed for failure to allege employee was an eligible employee) Garcia v. ALS Educ., Inc., 2016 WL 10951265, at *2 (S.D. Fla. Dec. 30, 2016) (Employee alleging an interference claim properly alleged hours worked,

dates worked, personal medical condition suffered; however, failure to allege sufficient causation facts supports dismissal.)

### *Two Specific Claims Under FMLA*

50.    There are two main types of claims that can be asserted under the FMLA which have been asserted here; Count I, a claim of interference with rights and Count II, a claim of retaliation.[3] Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001).

51.    An interference claim is stated as: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615 (a)(1).  In a retaliation claim, "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615 (a)(2).

52.    "Although in some circumstances, a given set of facts will fall clearly into either (a)(1) or (a)(2), it appears that the lines between the two categories [interference and retaliation] are not hard and fast." Stallings v. Hussmann Corp., 447 F.3d 1041, 1051 (8th Cir. 2006).

53.    Regardless of the theory, **well-plead facts are required** in an FMLA Complaint. Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1247–48 (11th Cir. 2015) (emphasis added) (Motion for default denied where employee generally alleged she was an eligible employee, but failed to allege that she met the minimum requirements, length of employment, hours worked, and that employer met requirements of eligibility to provide FMLA).

   *(I)*    *Interference*

---

[3] There is a third type of claim, regarding interference with proceedings. Said claim involves termination of an individual because of their cooperation in a FMLA proceeding. Such is not at issue in this case.

54. Plaintiff alleges an interference claim whereby she alleges the interference was that Defendant reduced her hours, reduced her days, sent her home when there were no mediations available and ultimately terminated her employment. [DE ¶ 43]

55. Interference is where "an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act." Strickland at 1206(internal citation omitted)

56. An employer's action that deters an employee from participating in protected activities constitutes an "interference" or "restraint" of the employee's exercise of his rights. Stallings at 1050–51 quoting Bachelder v. Am. W. Airlines, Inc._, 259 F.3d 1112, 1124 (9th Cir. 2001).

57. "An interference claim has two elements: (1) the employee was entitled to a benefit under the FMLA, and (2) her employer denied her that benefit. White v. Beltram Edge Tool Supply, Inc., 789 F.3d 1188, 1191 (11th Cir. 2015) (internal citation omitted).

58. 'Benefits' pertain to insurance, disability, leave, educational benefits, and pensions. 29 C.F.R. § 825.215. There are no allegations that these types of benefits was affected upon her return from FMLA.

59. An interference claim is properly dismissed where employee fails to explain what benefits were denied, how they were denied, and that employee was entitled to them. Garcia at *3.

60. Plaintiff has not sufficiently alleged that she was entitled to the benefits, hours and days, which she alleges she lost. There are no allegations as to what Plaintiff's actual hours and days were that she worked prior to December 29, 2015. The Compliant only states that her hours could not exceed 35 in one week.

61. There are no allegations as to how many hours the Plaintiff received of 'busy work' when there were no mediations prior to December 29, 2015 at all and any of the various locations she was assigned to. There are no allegations to support that the termination was due to the FMLA.

Plaintiff's termination was based upon a PIP which was in effect prior to her FMLA leave and alleged poor performance.

*62.* There are no allegations that Plaintiff was denied her benefits under FMLA. At best, Plaintiff tries to masquerade elements of an FMLA claim by alleging that her co-workers were treated differently. For Plaintiff's interference claim, her pre-FMLA status must be analyzed, and compared to her status upon her return; not her co-workers' status.

*63.* Although Plaintiff's dates are clear, she seems to imply that the PIP was a form of interference (or retaliation), under the FMLA. However, the PIP cannot be either interference or retaliation, because Plaintiff has clearly stated that she was placed on a PIP *prior* to taking her FMLA leave. The facts show that the PIP was to terminate after she returned from her leave. There are no facts to support that the termination was pretextual or was based on anything other than poor performance. Additionally, the time frame between the return from FMLA to the date she was terminated, nine months, was so remote, that additional facts must be alleged.

### (II) *Retaliation*

64. A Retaliation claim requires "…an employee asserts that his employer discriminated against him because he engaged in activity protected by the [FMLA] Act…" Strickland at 1206.

65. Unlike in an interference action, "to succeed on a retaliation claim, an employee must demonstrate that his employer **intentionally** discriminated against him in the form of an adverse employment action for having exercised an FMLA right." Id. at 1207. (emphasis added). "[A] plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions "were motivated by an impermissible retaliatory or discriminatory animus." Id.

66. "In order to state a claim of retaliation, an employee must allege that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity." Id. at 1207.

67. First, Plaintiff has alleged that she sought FMLA leave between December 29, 2015 thought March 2016. Without proper facts alleged, it appears that she utilized, at most, 13 weeks and 1 day of FMLA; 8 days in excess of FMLA leave.

68. Secondly, Plaintiff has failed to show that she suffered an adverse employment action. As stated above, there are no claims as to what her hours, days, and time spent on 'busy work' were *prior* to taking FMLA. However, Plaintiff states that her hours as a part-time employee could not exceed 35 hours a week. Plaintiff fails to show that the hours, days, and 'busy work' were different than prior to her leave.

69. Plaintiff admits that prior to her FMLA leave she was placed on a PIP due to various negative instances over a three to four month time span. When Plaintiff returned to work, she was still under the PIP which was wholly unrelated to her FMLA leave and terminated on that basis.

70. Third, Plaintiff fails to allege facts that support the termination was due to the FMLA leave. Where a complaint fails to specify facts supporting a causal link between the termination and protected activity, other than temporal proximity between the two events, the complaint must be dismissed. Garcia, at *3.

71. Further, there is a nine-month span between the time Plaintiff returned to work to the time she was terminated. This time frame evidences that the termination was not related to the FMLA. The time between the termination and the FMLA substantiates that Plaintiff fails to state a cause of action. "If there is a delay of more than three months between the two events, then the temporal proximity is not close enough, and the plaintiff must offer some other evidence tending to show

causation. Intervening acts of misconduct can break any causal link between the protected conduct and the adverse employment action." Henderson v. FedEx Express, 442 Fed. Appx. 502, 506 (11th Cir. 2011) (internal citation omitted). See also Wascura v. City of S. Miami, 257 F.3d 1238, 1248 (11th Cir. 2001) (Three and a half months fails to create causation.). Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006) (No causation in a three-month period.)

72. Plaintiff must show intent in a retaliation claim. Other than one conclusory statement in the Complaint of "Defendants actions were willful.", there are no allegations of intentional, retaliatory, or discriminatory motivations, as is required. Strickland at 1207. [DE 1, ¶ 38]

### *Termination is Permissible*

73. FMLA does not guarantee that an employee is immune from any and all adverse employment actions. An employee who uses FMLA may still be terminated where the basis for such termination was unrelated to FMLA. Strickland at 1208. An employer is permitted to terminate an employee who was being reprimanded prior to exercising FMLA and is permitted to terminate an employee whose transgressions are uncovered while she is on FMLA. Schaaf v. Smithkline Beecham Corp., 602 F.3d 1236, 1242-43 (11th Cir. 2010).

74. Defendant was permitted to terminate Plaintiff's employment, even though she had exercised her FMLA leave.

### IV.   CONCLUSION

75. On the basis that the Plaintiff fails to allege sufficient facts to substantiate an interference and retaliation FMLA claim, Defendant requests this Court dismiss the Complaint. In the event the Court permits Plaintiff to amend the Complaint, Defendant requests this Court strike any relief for damages.

**WHEREFORE**, Defendant, ELEVENTH JUDICIAL CIRCUIT OF FLORIDA, requests this Court dismiss the Complaint in its entirety with prejudice as Plaintiff, SUSAN BERNSTEIN, fails to state a proper cause of action, or, in the alternative, strike Plaintiff's claims for damages due to the State's immunity from such suits for damages under the FMLA.

Dated: August 2, 2018

> Respectfully Submitted,
> PAMELA JO BONDI
> FLORIDA ATTORNEY GENERAL
>
> *s/ Melissa L. Eggers*
> Melissa Lynn Eggers
> Assistant Attorney General
> Florida Bar No: 72506
> Melissa.Eggers@myfloridalegal.com
> Office of the Attorney General
> 1515 North Flagler Drive, Suite 900
> West Palm Beach, FL 33401
> Telephone: 561-268-5218
> Facsimile: 561-837-5102
> Counsel for Defendant
> ELEVENTH JUDICIAL CIRCUIT

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CM/ECF on August 2, 2018 on all counsel or parties of record on the Service List below.

> s/Melissa Lynn Eggers
> Melissa Lynn Eggers
> Assistant Attorney General

## SERVICE LIST

*Via CM/ECF*
Stuart Silverman, Esquire
Smslawfirm@aol.com
Stuart M. Silverman, P.A.
P.O. Box 812315
Boca Raton, FL  33481-2315
Telephone (561) 289-9319

Facsimile (561) 283-0900
Attorney for Plaintiff
SUSAN BERNSTEIN